UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                   :
ROBERT PLEMMONS and LINDA PLEMMONS,:    04 Civ. 4023 (LAP)
                                   :
            Plaintiffs,            :    OPINION AND ORDER
                                   :
         -against-                 :
                                   :
STEELCASE INC. and AFD CONTRACT    :
FURNITURE, INC.,                   :
                                   :
            Defendants.            :
                                   :
-----------------------------------x

LORETTA A. PRESKA, U.S.D.J.

     Plaintiff Robert Plemmons brings this action against

Defendant Steelcase Inc., the manufacturer of the file

cabinet which allegedly injured him, for negligence, breach

of implied warranty, defective manufacturing, and failure

to warn.[1]  Plaintiff now moves for summary judgment on his

breach of implied warranty claim under Rule 56 of the

Federal Rules of Civil Procedure on the ground that the

file cabinet was not fit for its ordinary purpose.

Defendant moves for summary judgment under Rule 56 on all

causes of action on the grounds that Plaintiff's expert

---

[1] Plaintiff and Defendant AFD Contract Furniture reached a
settlement and, on March 7, 2007, the Court entered a
Stipulation and Order of Dismissal as to AFD.  (Dkt. No.
91).  Plaintiff also withdrew his design defect claim
against Steelcase.  (See Plaintiff's Memorandum of Law in
Opposition to Defendants' Motions for Summary Judgment,
filed on July 11, 2006, at 1).

cannot demonstrate that a defect existed when the file cabinet left Steelcase's possession and control and the file cabinet's warning label did not cause his alleged injuries.  For the reasons set forth below, Plaintiff's motion is denied, and Steelcase's motion is denied in part and granted in part.

BACKGROUND

On November 4, 1999, AFD Contract Furniture ("AFD"), an authorized distributor of Steelcase products, purchased a four drawer lateral file cabinet from Steelcase known as the Steelcase Firstfile Model Number 230-461HF (the "File Cabinet").  (Steelcase 56.1 Stmt. ¶¶ 21-22).[2]  The File Cabinet was made at Steelcase's facility in Grand Rapids, Michigan and shipped F.O.B. to AFD some time after November 4, 1999 and prior to May 2001.  (Id. ¶¶ 23, 29; see also Paparian Aff. ¶ 11).[3]

_____

[2] "Steelcase 56.1 Stmt." refers to those material facts set forth in "Defendant Steelcase Inc.'s Statement Pursuant to Local Rule 56.1," filed on June 26, 2006, which were admitted in "Plaintiff's Response to Defendant Steelcase Inc.'s Statement Pursuant to Local Rule 56.1 Statement," filed on July 11, 2006, or were otherwise undisputed.

[3] "Paparian Aff." refers to Glenn T. Paparian's "Affidavit in Opposition to Defendant Steelcase Inc.'s Motion for Summary Judgment and Defendant AFD's Motion for Summary Judgment," dated July 10, 2006.

AFD sold the File Cabinet to American International Group ("AIG"), Plaintiff's employer, in connection with AIG's renovation of its offices at 175 Water Street, New York, New York.  (Steelcase 56.1 Stmt. ¶¶ 23-24).  The File Cabinet was installed by AFD.  (Pl. 56.1 Stmt. ¶ 7).[4]  In early 2001, Plaintiff moved to the Water Street location. (Steelcase 56.1 Stmt. ¶ 7).  The File Cabinet was part of Plaintiff's work station.  (Id. ¶¶ 8, 21-22).

The File Cabinet was designed by Steelcase with an interlock mechanism to allow only one drawer to open at a time.  (Pl. 56.1 Stmt. ¶ 3).  The interlock system was designed to work as follows: (i) as one drawer opens, a cam rotates forward applying tension to a vertical metal band, or strip, attached to the top and bottom of the File Cabinet; (ii) as tension is applied to the metal band, the other cams are prevented from rotating.  (Id. ¶ 4).  Pieces known as "Zytel clips" are placed on the metal band to hold it in place during assembly.  (Id. ¶ 5).  The Zytel clips

---

[4] "Pl. 56.1 Stmt." refers to those material facts set forth in Plaintiff's "Rule 56.1 Statement," filed on June 26, 2006, which were admitted in "Defendant Steelcase Inc.'s Counter Statement of Material Facts Pursuant to Local Rule 56.1," filed on July 11, 2006, or were otherwise undisputed.

are also used to hold the metal band in place during shipping. (Knox Dep. at 145/18-147/13).[5]

At the time the File Cabinet was made, a specific group of Steelcase employees installed the Zytel clips and performed the final test to ensure that the interlock mechanism was functional. (Pl. 56.1 Stmt. ¶ 24; see also Steelcase 56.1 Stmt. ¶ 31). At that time, Steelcase did not use checklists for each file cabinet assembled to indicate whether the Zytel clips were installed and whether the interlock mechanism worked. (Pl. 56.1 Stmt. ¶ 24; see also Steelcase 56.1 Stmt. ¶ 31). In addition, at that time, Steelcase did not have a redundant checking system where one assembler would verify another assembler's work. (Pl. 56.1 Stmt. ¶ 24; see also Steelcase Stmt. ¶ 31).

Prior to May 9, 2002, Plaintiff never opened or used the bottom three drawers of the File Cabinet and only opened the top drawer to store some small personal items. (Pl. 56.1 Stmt. ¶ 10). On May 9, 2002, Plaintiff placed files in the bottom three drawers of the File Cabinet and was in the process of filling the top drawer with legal sized Redwells when the File Cabinet initially tipped towards him. (Id. ¶ 11). At the time the File Cabinet

---

[5] "Knox Dep." refers to the Deposition of Dr. Erick H. Knox, dated April 3, 2006, submitted as Exhibit 7 to Mr. Paparian's Affidavit.

first tipped, the top drawer was already open.  (Id. ¶ 12).
After the File Cabinet began to tip, Plaintiff placed his
hands on the top of the File Cabinet to attempt to return
it upright.  (Id. ¶ 13).  After Plaintiff placed his hands
on the File Cabinet to prevent it from falling and to
return it to an upright position, the second and third
drawers both opened preventing him from returning the
cabinet to an upright position.  (Id. ¶ 14).

It was during this incident when Plaintiff allegedly
suffered injuries to his lower back and right leg.  (Id.
¶¶ 18, 20).  Upon inspection on August 3, 2004, the File
Cabinet was missing three Zytel clips, one clip for each of
the top drawers.  (Id. ¶ 6).

## DISCUSSION[6]

### 1.   Legal Standard for Summary Judgment

"Summary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting

---

[6] The parties do not dispute that New York law governs
Plaintiff's claims.

Fed. R. Civ. P. 56(c)).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).  "Factual disputes that are irrelevant or unnecessary" cannot defeat a motion for summary judgment.  Id. at 248.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-movant . . . ."  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253 (2d Cir. 2002) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997) ("In assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.").  Only if it is apparent that no rational fact-finder "could find in favor of the nonmoving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

2.   Plaintiff's Motion for Summary Judgment

A.   Legal Standard for Breach of Implied Warranty Claim

A breach of implied warranty claim requires proof of
the following three elements: "'(1) that the product was
defectively designed or manufactured; (2) that the defect
existed when the manufacturer delivered it to the purchaser
or user; and (3) that the defect is the proximate cause of
the accident.'" Silivanch v. Celebrity Cruises, Inc., 171
F. Supp. 2d 241, 259 (S.D.N.Y. 2001) (quoting In re
American Export Lines, Inc., 620 F. Supp. 490, 518
(S.D.N.Y. 1985)); see also Cigna Prop. & Casual Ins. Co. v.
Bayliner Marine Corp., No. 92 Civ. 7891, 1995 WL 125386, at
*12 (S.D.N.Y. Mar. 22, 1995) (same).  In short, the implied
warranty is breached where the product in question is not
fit for the ordinary purpose for which it is to be used.
See Denny v. Ford Motor Co., 662 N.E.2d 730, 736 (N.Y.
1995) (citing N.Y. U.C.C. § 2-314(2)(c)).

B.   Application to the File Cabinet

According to Plaintiff, "there is no genuine issue as
to any material fact that Steelcase manufactured and
distributed a file cabinet with three missing components,
and a non-operational interlock system which permitted the
simultaneous opening of more than one drawer." (Pl. Mem.

at 6).[7]   As "[t]he [File Cabinet] was not fit for its intended purpose because it allowed multiple drawers to open at the same time," Plaintiff asserts that "Steelcase is liable for the breach of its implied warranty."  (Pl. Reply Mem. at 11).[8]

To support his position, Plaintiff cites to three parts of the record in this case.  First, Plaintiff cites Steelcase's inability to demonstrate affirmatively that the File Cabinet was, in fact, properly assembled.  (Id. at 8-9).  Specifically, Plaintiff states that Steelcase "has offered no witness with actual first-hand knowledge of the assembly of the file cabinet at issue."  (Id. at 9). Second, Plaintiff cites the report of his expert, Dr. Clyde C. Richard.  (Id. at 7-8).  Dr. Richard concluded that, based on his examination of the File Cabinet, it was missing three Zytel clips and had a defective interlock system at the time of the incident.  (Dr. Richard Rep. at 3-4).[9]  Third, Plaintiff cites photographs of the File

---

[7] "Pl. Mem." refers to the "Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment," filed on June 26, 2006.

[8] "Pl. Reply Mem." refers to the "Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment," filed on July 20, 2006.

[9] "Dr. Richard Rep." refers to the Report of Dr. Clyde C.
                                        (continued)

Cabinet "taken a few weeks after the accident" to
"corroborate [his] allegation that the product was
defective." (Pl. Mem. at 5).

However, assuming _arguendo_ that the above evidence is
admissible, when viewing those facts in a light most
favorable to Steelcase, a jury could reasonably conclude
that the File Cabinet was not defective when it left
Steelcase's possession or control. Stated differently, it
cannot be said that the only conclusion a reasonable fact-
finder could reach is that the File Cabinet was defective
when shipped.

There is evidence in the record that, at the time the
File Cabinet was assembled, it was Steelcase's practice to
have the employee who installed the Zytel clips also
perform a check of the interlock mechanism to ensure its
functionality. (Steelcase 56.1 Stmt. ¶ 31; _see also_ Pl.
Reply Mem. at 8-9). It is further undisputed that
Steelcase would ship a file cabinet only after the
successful completion of this test. (Steelcase 56.1 Stmt.
¶ 31). Finally, there is also evidence in the record that
it was AFD's practice to check that a file cabinet's

_____

(continued)
Richard, dated August 24, 2004, submitted as Exhibit F to
Amy L. Ruina's "Affidavit in Support of Motion for Summary
Judgment" for Steelcase (the "Ruina Aff."), dated June 22,
2006.

interlock mechanism was functional before installation was deemed complete. (Id. ¶ 38).

Similarly, Dr. Richard does not definitively address the presence, or lack thereof, of the three Zytel clips and the functionality of the interlock system at the time the File Cabinet was assembled and shipped by Steelcase. It is undisputed that Dr. Richard examined the File Cabinet on August 3, 2004, long after it left the possession and control of Steelcase, was installed by AFD, and more than two years after the incident. (Dr. Richard Rep. at 1-2; see also Dr. Richard Dep. 136/5-137/3).[10] Dr. Richard attempts to eliminate the possibility that any intervening act(s) caused the Zytel clips to be absent and the interlock mechanism to be non-operational by stating that, inter alia, one would have to disassemble the File Cabinet in order to remove the Zytel clips and disable the interlock mechanism and that there was no evidence of such disassembly. (Dr. Richard Aff. ¶ 14(c)).[11] Weighing this statement against the above evidence about Steelcase's and AFD's assembly and installation practices at the time and

---

[10] "Dr. Richard Dep." refers to the Deposition of Dr. Clyde C. Richard, dated March 2, 2006, submitted as Exhibit G to Ms. Ruina's Affidavit.

[11] "Dr. Richard Aff." refers to the Affidavit of Dr. Clyde C. Richard submitted in opposition to Steelcase's motion for summary judgment, dated June 30, 2006.

drawing all the inferences in favor of Steelcase, it cannot be said that the only conclusion a fact-finder could reach is that the File Cabinet was defective when shipped.

Finally, Plaintiff does not contend that the photographs show the locations where the Zytel clips would have been if Steelcase had installed them.  (Pl. Reply Mem. at 6 ("In the photographs[,] the subject file cabinet has multiple drawers open at the same time.")).  At most, the photographs show that the interlock system was defective on the date of the photographs, long after the File Cabinet left the possession and control of Steelcase, was installed by AFD, and several weeks after the incident.  However, as discussed above, that does not conclusively show that the Zytel clips were missing and the interlock system was defective when the File Cabinet left Steelcase's possession and control.

In sum, examining the evidence in the light most favorable to Steelcase at the summary judgment stage, a reasonable fact-finder could conclude that the File Cabinet was not defective when it left Steelcase's possession and control.  Given this conclusion, it is unnecessary to address whether Plaintiff has demonstrated as a matter of law that the defect in the File Cabinet proximately caused

his alleged injuries.  Thus, Plaintiff's motion for summary judgment on his breach of implied warranty claim is denied.

### 3.   Steelcase's Motion for Summary Judgment

A.   Legal Standards for Negligence, Breach of Implied
      Warranty, and Manufacturing Defect Claims

"Under New York [l]aw, a manufacturer can be liable for injury caused by the manufacturer's product under theories of negligence, breach of . . . implied warranty, and strict liability in tort." Macaluso v. Herman Miller, Inc., No. 01 Civ. 11496, 2005 WL 563169, at *4 (S.D.N.Y. Mar. 10, 2005) (citing, inter alia, Voss v. Black & Decker Mfg. Co., 450 N.E.2d 204, 207 (N.Y. 1983)).  "A claim of negligence requires that the plaintiff prove that the manufacturer was responsible for a defect that caused injury, and that the manufacturer could have foreseen the injury.  Id. (citing Robinson v. Reed-Prentice Div., 403 N.E.2d 440, 444 (N.Y. 1980)).  As noted above, "a breach of implied warranty claim requires that the plaintiff prove that the product is not 'fit for the ordinary purposes for which such goods are used.'"  Id. (quoting Denny, 662 N.E.2d at 736).  Finally, in a manufacturing defect case, which is a type of strict products liability claim, "the plaintiff must prove that the product failed to perform in

the intended manner due to a flaw in the manufacturing
process." Id. at *5 (citing Denny, 662 N.E.2d at 735 n.3).

"[W]hether the action is pleaded in strict products
liability, breach of warranty or negligence, it is a
consumer's burden to show that a defect in the product was
a substantial factor in causing injury and . . . that the
defect complained of existed at the time the product left
the manufacturer . . . ." Tardella v. RJR Nabisco, Inc.,
178 A.D.2d 737, 737 (N.Y. App. Div. 3d Dep't 1991).
Plaintiff's burden includes a "show[ing] that it is more
probable than not that the injury was caused by [a given]
defendant." Id. at 739 (quoting Kennedy v. Peninsula Hosp.
Ctr., 135 A.D.2d 788, 792 (N.Y. App. Div. 2d Dep't 1987));
see also Gilks v. Olay Co., Inc., 30 F. Supp. 2d 438, 443
(S.D.N.Y. 1998) ("The existence of a defect may be inferred
by circumstantial evidence when the product does not
perform as intended and plaintiff's proof excludes the
possibility of other causes.").  "Mere use of the product
and subsequent injury, however, are not a sufficient basis
from which to infer causation." Gilks, 30 F. Supp. 2d at
443 (citations omitted).

B.   <u>Legal Standard for Expert Testimony</u>

In order for expert testimony to be admissible, the Court must ensure that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Expert testimony is properly excluded when there is "too great an analytical gap between the data and the opinion proferred."  <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 144 (1997).

C.   <u>Application to the File Cabinet</u>

As noted above, "[a]n essential element of all of these claims is the existence of a defect in the product."  <u>Macaluso</u>, 2005 WL 563169, at *4 (citations omitted).  Steelcase contends that "without the testimony and report of Dr. Richard, [Plaintiff] is unable to prove the[] elements" of his claims.  (Steelcase Mem. at 13).[12]

According to Steelcase, Dr. Richard's report should be excluded because his "conclusions are not based on facts alleged in the record."  (<u>Id.</u> at 8-9).  Specifically, Steelcase challenges Dr. Richard's conclusion that "to

---

[12] "Steelcase Mem." refers to the "Memorandum of Law in Support of Motion for Summary Judgment by Steelcase Inc.," filed on June 23, 2006.

avoid tipping of the file cabinet, it is important that
multiple drawers of the lateral file cabinet not be allowed
to be opened at the same time." (Dr. Richard Rep. at 5).
Because the File Cabinet began to tip when only one drawer
was open (see supra at 4-5), Steelcase asserts that Dr.
Richard's expert testimony "is based on [an] incorrect
factual assumption[] that render[s] all of his subsequent
conclusions purely speculative." Macaluso, 2005 WL 563169,
at *8.

At oral argument, counsel for Plaintiff stated that
Plaintiff's theory of the case is not dependent on when the
File Cabinet began to tip and how many drawers were open at
that time. Rather, counsel for Plaintiff stated that
Plaintiff's theory is that his injuries were the result,
not of the initial tipping of the File Cabinet, but
multiple drawers opening.

Irrespective of when the File Cabinet began to tip,
Dr. Richard concluded that the interlock mechanism was
defective if multiple drawers were able to open at once.
(See Dr. Richard Rep. at 5). This opinion is not
contingent on the tipping sequence. Accordingly, the Court
declines to exclude Dr. Richard's report on this point.

With this piece of expert testimony as part of the
record on summary judgment, a reasonable fact-finder could

conclude that the File Cabinet was defective at the time of
the incident.  Because Steelcase cannot prevail as a matter
of law on this common element of Plaintiff's negligence,
implied warranty, and manufacturing defect claims, its
motion for summary judgment is denied as to them.


D.    Legal Standard for Failure to Warn

    "To prove a defect in the form of a failure to warn,
the plaintiff must show that: (1) the defendant
manufacturer had a duty to warn; (2) against dangers
resulting from foreseeable uses about which the defendant
knew or should have known; and (3) failure to warn was the
proximate cause of the harm."  Macaluso, 2005 WL 563169 at
*5 (citing, inter alia, Liriano v. Hobart Corp., 700 N.E.2d
303, 305 (N.Y. 1998)).  The Court of Appeals has stated
that "a defendant's liability will not arise from a breach
of [the] duty [to warn] alone.  Instead, the plaintiff must
show, in addition, that 'the failure to warn [was] a
substantial cause of the events which produced the
injury.'"  Burke v. Spartanics Ltd., 252 F.3d 131, 139 (2d
Cir. 2001) (emphasis in original) (quoting Billsborrow v.
Dow Chem., 177 A.D.2d 7, 16 (N.Y. App. Div. 2d Dep't
1992)).

E.   <u>Application to the File Cabinet</u>

    Plaintiff concedes that Steelcase placed a caution label on the File Cabinet.  (Pl. Opp'n Mem. at 17-18).[13] That label instructs users to, <u>inter alia</u>, "load lower openings with heavier material first," which the Plaintiff did here (<u>see</u> <u>supra</u> at 4), and states, at the top in capitalized letters, that users should "FOLLOW THESE DIRECTIONS TO PREVENT CABINET FROM TIPPING OVER AND CAUSING INJURY."  (Ruina Aff., Ex. P).

    Nevertheless, Plaintiff contends that Steelcase breached its duty to warn because it misplaced the label on the File Cabinet.[14]  Specifically, Plaintiff contends that Steelcase "placed the caution label on the left side of the top drawer which was a location not visible to an end user

---

[13] "Pl. Opp'n Mem." refers to "Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment," filed on July 11, 2006.

[14] In his opposition papers, Plaintiff asserted a new claim that the "caution label failed to explain to the end user that serious injury or death could occur from a tip-over." (Pl. Opp'n Mem. at 18).  At the outset, this attack on the warning label's content is belied by Plaintiff's expert. (<u>See</u> Ruina Aff., Ex. G at 176/21-23 ("Q. Your only concern was where [the label] was located.  Is that correct?  A. Yes.  Where it was located.")).  Moreover, even if the Court considered the merits of this argument, summary judgment would still be granted for Steelcase on Plaintiff's failure to warn claim.  The label clearly warned against the possibility of the File Cabinet tipping over and injury resulting therefrom.  (<u>See</u> Ruina Aff., Ex. P).  No reasonable fact-finder could conclude otherwise.

standing in front of the [File] [C]abinet or from any location within [Plaintiff's] cubicle." (Pl. Opp'n Mem. at 18). According to Plaintiff, "[w]arnings should have been placed in a location where they would have been visible to the [File] [C]abinet's user during the ordinary use of the [C]abinet." (Id.).

However, neither Plaintiff nor his expert explained how the location of Steelcase's warning was the cause, let alone the "substantial" cause, of the incident. Indeed, Plaintiff loaded the File Cabinet from the lowest to the highest drawer in the manner instructed by the label. (Compare Ruina Aff., Ex. P, with supra at 4). Thus, Steelcase's motion for summary judgment dismissing Plaintiff's breach of duty to warn claim is granted.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment [dkt. no. 55] is denied, and Steelcase's motion for summary judgment [dkt. no. 44] is denied in part and granted in part.

SO ORDERED:

DATED:     New York, New York
           March 28, 2007

_Loretta A. Preska_
LORETTA A. PRESKA, U.S.D.J.